IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| IN THE MATTER OF *PRO* | § | |
| *HAC VICE* COUNSEL | § | No. 544, 2014 |
| SUPREME COURT OF THE | § | |
| STATE OF DELAWARE: | § | Board Case No. 111845-B |
| | § | |
| ALEX J. BROWN, | § | |
| Respondent. | § | |

Submitted: October 17, 2014
Decided: October 21, 2014
Corrected: October 22, 2014

Before **HOLLAND**, **RIDGELY**, and **VALIHURA**, Justices.

## O R D E R

This 21st day of October 2014, it appears to the Court that:

(1)     This is a lawyer disciplinary proceeding. On September 25, 2014, the Board on Professional Responsibility filed a report with this Court recommending, among other things, that the respondent, Alex J. Brown, be publicly reprimanded and pay the costs of the proceeding. A copy of the Board's report is attached to this order. Neither the Office of Disciplinary Counsel nor Slanina has filed any objections to the Board's report.

(2)     The Court has considered the matter carefully. We find the Board's recommendation of a public reprimand to be appropriate. We, therefore, accept the Board's findings and recommendation for discipline and incorporate the Board's findings and recommendation by reference.

NOW, THEREFORE, IT IS ORDERED that the Board's September 25, 2014 report is hereby ACCEPTED. The Office of Disciplinary Counsel shall disseminate this Order in accordance with Rule 14 of the Delaware Lawyers' Rules of Disciplinary Procedure.

BY THE COURT:

/s/ Henry duPont Ridgely
Justice

**BOARD OF PROFESSIONAL RESPONSIBILITY
OF THE SUPREME COURT OF DELAWARE**

| | | |
|---|---|---|
| IN THE MATTER OF | ) | **CONFIDENTIAL** |
| *PRO HAC VICE* COUNSEL | ) | |
| SUPREME COURT OF THE | ) | **BOARD CASE NO. 111845-B** |
| STATE OF DELAWARE: | ) | |
| | ) | |
| ALEX J. BROWN, | ) | |
| RESPONDENT. | ) | |

## BOARD REPORT AND RECOMMENDATION OF SANCTION

Before a panel of the Board of Professional Responsibility is a Petition for Discipline. The Respondent, Alex J. Brown, Esquire, a member of the Maryland Bar, was admitted *pro hac vice* by the Court of Chancery and is subject to the jurisdiction of the Supreme Court of Delaware for disciplinary action.[1]

Respondent represented several parties before the Court of Chancery where the court entered a Seizure and Injunction Order placing an insurance company under control of the Delaware Insurance Commissioner. The court enjoined the filing of litigation against the insurance company in any other forum. Respondent acted in contempt of the Seizure and Injunction Order by filing suit in Maryland state court against the insurance company after the injunction had been entered.

The Office of Disciplinary Counsel has brought a Petition alleging professional misconduct under Rules 3.4(c) and 8.4(d) of the Delaware Lawyers'

---

[1] Delaware Lawyers' Rules of Disciplinary Procedure 5(a).

Rules of Professional Conduct. Respondent admitted that he acted in contempt of the Court of Chancery injunction, and violated these Rules. Therefore, the issue for the Panel is the appropriate sanction.

The Panel has reviewed the hearing evidence using the framework from the Standards for Imposing Lawyer Sanctions adopted by the American Bar Association Standing Committee on Professional Discipline. We have also considered Supreme Court case law on sanctions and other authorities. The Panel recommends that a public reprimand be imposed, and that Respondent pay the costs of this proceeding.

## I.    Procedural Background

The Office of Disciplinary Counsel ("ODC") filed the Petition for Discipline ("Petition") on June 19, 2014. Respondent, through his counsel, filed an answer to the Petition on July 7, 2014 ("Answer") and admitted all facts alleged in the Petition except one limited allegation.[2] The Respondent also admitted violating the Delaware Rules of Professional Conduct ("Rules") alleged in Counts I and II.

---

[2] Respondent denied part of paragraph eight of the Petition where the Insurance Commissioner claimed that Respondent "kept secret and never served" a lawsuit filed in September 2012 against the Insurance Department and others arising from their oversight of Indemnity, the insurance company. The record shows, however, that the Court made a finding consistent with the allegation. Hearing Exhibit A(4) at ¶ C ("[T]he court has found the following facts to be true … a lawsuit that Brown had filed on behalf of Indemnity in September 2012 against the . Commissioner and others arising from their oversight of Indemnity, but which Brown had filed under seal, kept secret, and never served…." Because this earlier lawsuit did not form the basis for any of the current disciplinary charges, the Panel does not find Respondent's denial material to this proceeding.

2

On August 19, 2014, the Panel heard evidence and argument regarding sanctions. Appendix A lists the joint exhibits and additional hearing exhibits admitted into evidence, all without objection. At the hearing ODC called Philip Metcalf, Esquire, General Counsel of Indemnity Insurance Corporation, RRG ("Indemnity"); W. Harding Drane, Jr., Esquire, an attorney formerly with the Delaware Department of Justice Civil Division; and Respondent. Respondent called Theodore A. Kittila, Esquire, an attorney with the Greenhill Law Group, LLC and Respondent's Delaware counsel for part of the Court of Chancery proceedings;[3] and Respondent's law partner, Brian Thompson, Esquire with the law firm Silverman, Thompson, Slutkin, & White LLC in Baltimore, Maryland. Respondent also testified as part of his defense. Counsel for the parties concluded the hearing with closing arguments.

## II.    Factual Findings

The following factual findings are determined from the admissions in the Answer to Petition for Discipline, the hearing exhibits, and the testimony at the hearing.

---

[3] Wilks, Lukoff & Bracegirdle moved for Respondent's admission *pro hac vice*. After the court granted the Wilks' firm's motion to withdraw, the Greenhill Law Group substituted for the Wilks firm. By the time of the substitution of counsel, Respondent had committed the act leading to this disciplinary proceeding. August 19, 2014 Hearing Transcript (abbreviated "Hr'g Tr.") at 139.

3

Indemnity is a Delaware domiciled risk retention group that sells insurance policies to restaurants and nightclubs and for special events.[4] Jeffrey Cohen founded Indemnity and served as its president, chairman and chief executive officer.[5] Indemnity is subject to the regulatory authority of the Delaware Department of Insurance ("Department"). The Department is charged with protecting insurance consumers by making sure that insurance companies are able to pay claims as well as investigate and prosecute insurance fraud.[6]

On May 30, 2013, the Department filed a seizure petition in the Court of Chancery because of its concern about Indemnity's financial viability and its suspicion that Jeffrey Cohen had engaged in fraud.[7] The Court of Chancery reviewed the seizure petition *ex parte*, found it to be supported by sufficient evidence and entered a confidential seizure and injunction order on the same day ("Seizure Order").[8]

The Seizure Order enjoined persons with notice of the Seizure Order from bringing claims relating to Indemnity, except in the Court of Chancery:

> 10. All persons and entities having notice of these proceedings or of
> this Seizure and Injunction Order, are hereby enjoined and restrained
> from asserting any claim against the Commissioner, her authorized
> agents, or IICRRG in connection with their duties as such, or against

---

[4] Petition ¶ 3.
[5] *Id.* ¶ 4.
[6] *Id.* ¶ 3.
[7] *In the Matter of the Rehabilitation of Indemnity Insurance Corporation, RRG*, C.A. No. 8601-VCL.
[8] Hearing Exhibit (abbreviated "Hr'g Ex.") A(1).

4

the Assets, except insofar as such claims are brought in the [sic] these seizure proceedings or any subsequent delinquency proceedings pursuant to 18 *Del. C.* ch. 59.[9]

On August 9, 2013, the court extended the Seizure Order, and on September 10, 2013, amended the Seizure Order to address violations by Jeffrey Cohen.[10] Following an evidentiary hearing the court imposed sanctions against Jeffrey Cohen on September 25, 2013 and permitted limited discovery to determine whether further sanctions were warranted against Cohen for violating the Seizure Order ("Sanctions Order").[11]

At the time of the disciplinary violations, Respondent was a member of the Maryland Bar and practicing with the Baltimore, Maryland law firm Silverman, Thompson, Slutkin & White, LLC.[12] During June, July and August 2013, Respondent advised Indemnity as its counsel with respect to at least the following matters: the Department's investigation of Indemnity leading up to the Seizure Order, the Court of Chancery seizure action, and a lawsuit Respondent filed on behalf of Indemnity in September 2012 against the Department and others arising out of the Department's oversight of Indemnity.[13]

On August 2, 2013, Delaware counsel for Indemnity moved to admit Respondent *pro hac vice* as counsel for Indemnity in the Court of Chancery

---

[9] *Id.*
[10] Hr'g Ex. A(2).
[11] *Id.*
[12] Petition ¶¶ 1-2.
[13] *Id.* at ¶ 8; Hr'g Ex. A(4).

5

proceeding.[14] On August 6, 2013, Delaware counsel for Indemnity voluntarily withdrew Brown's motion for admission *pro hac vice* as counsel of record for Indemnity in the Court of Chancery.[15]

On August 15, 2013, Delaware counsel for the proposed intervener RB Entertainment Ventures, LLC ("RB Entertainment") moved to admit Respondent *pro hac vice* as counsel of record for RB Entertainment in the Court of Chancery proceeding.[16] RB Entertainment is an entity controlled by Jeffrey Cohen and holds 99% of the equity of Indemnity.[17] Hr'g Ex. A(2). The Court granted the motion.[18]

On October 11, 2013, Respondent filed an action in the Maryland Circuit Court of Baltimore County on behalf of a number of entities owned by or affiliated with Jeffrey Cohen, against Indemnity and a number of Indemnity's directors, officers and employees (the "Maryland Action").[19] The Maryland Action related to the Department's oversight of Indemnity, and was adverse to Indemnity's interests.[20] Filing the Maryland Action violated the Seizure Order. The Maryland

---

[14] Hr'g Ex. A(4).

[15] *Id.*

[16] *Id.*

[17] Hr'g Ex. A(8), at *2; Hr'g Ex. A(2).

[18] Hr'g Ex. A(4).

[19] *Id.*; Ex. B(1).

[20] Because the Maryland Action was adverse to Indemnity, the Panel raised a possible Rule violation relating to conflicts of interest. The Office of Disciplinary Counsel had considered the charge, but did not bring disciplinary charges for this potential violation, claiming that the Maryland disciplinary authorities had jurisdiction over this charge. Hr'g Tr. 9.

Action also contained a number of volatile allegations against Indemnity and the Department, its agents and the individual defendants.[21]

On October 30, 2013 Indemnity moved to disqualify Respondent in the Delaware action and to revoke his admission *pro hac vice* on the grounds that Respondent's representation of RB Entertainment violated the Delaware Rules of Professional Conduct and that Respondent violated the Seizure Order by filing the Maryland Action.[22] On October 31, 2013, Delaware counsel for RB Entertainment, a company controlled by Jeffrey Cohen, represented to the Court of Chancery that Respondent would be withdrawing his appearance for Indemnity.[23] The Court of Chancery issued an order noting that under Court of Chancery Rule 5(aa) Respondent could not withdraw his appearance without leave of court.

As part of the same order the Court of Chancery issued a rule to show cause that required Respondent to appear and show cause why he should not be held in contempt of the Seizure Order, why his admission *pro hac vice* should not be revoked, and why other sanctions should not be ordered. The court also found as a preliminary matter that the filing of the Maryland Action constituted a knowing violation of paragraphs 9, 10, and 15 of the Seizure Order, paragraphs 2 and 3 of the Amended Seizure Order, and paragraphs 1, 6, 7, and 8 of the Sanctions Order.

---

[21] Hr'g Ex. B(1).
[22] Hr'g Ex. A(4).
[23] *Id.*

Such violations, according to the court, established a *prima facie* case for both civil and criminal contempt.[24]

Shortly after the October 31, 2013 show cause order, Respondent dismissed the Maryland Action.[25] On January 10, 2014, after briefing on the show cause order, the Court of Chancery held an evidentiary hearing. Respondent appeared with counsel and testified at the hearing, as did Indemnity representatives. Respondent admitted that by filing the Maryland action he acted in contempt of the Seizure Order.[26] The Court of Chancery found that Respondent "testified credibly that he was under great pressure from his client to file the Maryland Action, that he knew that it violated the Seizure Order, but that he chose to carry out his client's wishes rather than respect the Seizure Order."[27]

On January 13, 2014, the Court of Chancery issued an Order granting Respondent's motion to withdraw as counsel for Indemnity. The court also held:

> Brown's filing of the Maryland Action was contumacious and violated the Seizure Order. That act and Brown's representation of Indemnity at the same time he sued Indemnity in the Maryland Action threatened to prejudice the fairness of this proceeding. Brown mitigated his contempt by dismissing the Maryland Action promptly after the issuance of the Show Cause Order. The dismissal of the Maryland Action also mitigated the

---

[24] Hr'g Ex. A(2).
[25] Petition ¶ 13.
[26] Answer ¶ 15.
[27] Hr'g Ex. A(4).

8

representation issue, which Brown further addressed by seeking to withdraw his appearance in this proceeding.[28]

The Court of Chancery fined Respondent and required Respondent to self-report his actions to the disciplinary authorities in Maryland and Delaware.[29]

## III. Violation of the Rules

Delaware Professional Conduct Rule 3.4(c) states that "[a] lawyer shall not knowingly disobey an obligation under the Rules of the tribunal, except for an open refusal based on an assertion that no valid obligations exists." Respondent has admitted a violation of Rule 3.4(c). By filing the Maryland Action, Respondent admits that he knowingly violated the Seizure Order that enjoined persons with notice of the Seizure Order from bringing claims against Indemnity in any court other than the Court of Chancery.[30]

Delaware Professional Conduct Rule 8.4(d) states that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice." Respondent has admitted that by knowingly disobeying the Seizure Order, he engaged in conduct that is prejudicial to the administration of justice in violation of Rule 8.4(d).[31]

---

[28] *Id.*
[29] *Id.*
[30] Answer ¶ 19.
[31] *Id.* ¶ 21.

9

## IV. Recommended Sanctions

To determine the appropriate sanctions, the Panel starts with the four part test set forth in the American Bar Association Standards for Imposing Lawyer Sanctions ("ABA Standards").[32] At the outset the Panel makes a preliminary determination of the appropriate sanction by assessing the first three prongs of the test: (1) the ethical duty violated; (2) the lawyer's state of mind; and (3) the actual or potential injury caused by the lawyer's conduct. Following the preliminary determination, the Panel decides whether an increase or decrease in the preliminary sanction is justified because of mitigating or aggravating factors. The Panel must also consider Supreme Court of Delaware precedent for similar violations.

(1)   The ethical duties violated.

Respondent has admitted violating Rules 3.4(c) and 8.4(d).

(2)   State of mind.

Under Delaware Professional Conduct Rule 1.0(f), an attorney acts "knowingly" when one has "actual knowledge of the fact in question." The Rule violations charged here required "knowing" conduct, which Respondent admitted.

(3)   Injury caused by the misconduct.

Under the ABA Standards, "Injury" is defined as "harm to a client, the public, the legal system, or the profession which results from a lawyer's

---

[32] *In re Steiner*, 817 A.2d 793, 796 (Del. 2003).

10

misconduct. The level of injury can range from 'serious' injury to 'little or no' injury; a reference to 'injury' alone indicates any level of injury greater than 'little or no' injury." "'Potential injury' is the harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct."[33]

Respondent argues that there was little or no actual or potential harm because Jeffrey Cohen had filed a case *pro se* against Indemnity in Maryland in violation of the Seizure Order before Respondent filed his case. Respondent also claims that his case was never made public and was quickly withdrawn.[34]

The Panel finds to the contrary.[35] The testimony of the witnesses demonstrated actual harm to the parties and prejudice to the administration of

---

[33] 1991 ABA Standards as amended 1992 – Definitions. It appears that the American Bar Association re-adopted in 2012 the ABA Standards, but rescinded the adoption of the commentary to the ABA Standards. See ABA Resolution 107, available at http://www.americanbar.org/news/abanews/aba-news-archives/2013/08/107_-_adopted_-_reaf.html.

[34] Although the Maryland Action was not initially filed under seal, the record is conflicting on whether Respondent did so intentionally, or whether there were issues with the clerk's office in applying to file under seal. There was also a dispute as to whether the Maryland Action ever became public. The Panel does not need to resolve this dispute as part of its sanction recommendation.

[35] The parties dispute whether the Maryland Action filed by Respondent was ever made public before it was withdrawn. Respondent claims that he made every effort to file the complaint under seal, but issues with the clerk's office caused a delay in sealing the complaint. ODC maintains that the complaint became public because news sources reported the details in articles about Indemnity. The Panel need not resolve this factual dispute because the filing of the complaint, even if kept confidential from the public, still caused Indemnity and the Insurance Commissioner harm, as well as prejudice to the administration of justice.

11

justice. Indemnity, who was then Respondent's client, had to take actions to respond to the Maryland Action, including appointment of outside counsel to defend the action and interacting with its insurance carrier.[36] The Insurance Department also had to address the Maryland Action in the Delaware case, by filing motions, briefing the rule to show cause issues, and conducting the hearing.[37] The Court of Chancery had to review the submissions, conduct a hearing, and write an opinion, where it found that Respondent's actions violated the Seizure Order.[38] Standards 6.22 and 6.23 both speak in terms of injury or potential injury, meaning only a minimal amount of injury under the definitions. The Panel determines that there was actual injury and prejudice to the administration of justice.[39]

**The Presumptive Sanction**

The parties agree that ABA Standard 6.2 applies to determine the presumptive sanction. Under 6.2, there are an array of possible sanctions for failure to obey the rules of the tribunal, depending on the attorney's state of mind and seriousness of the harm. For purposes of determining the presumptive

---

[36] Hr'g Tr. 30-34; 38-41.

[37] *Id.* at 66-69.

[38] Hr'g Ex. A(4).

[39] See also *In re Abbott*, 925 A.2d 482, 486-87 (Del. 2007) (Superior Court was required to strike brief containing inflammatory and unprofessional writing, wasting judicial resources and describing behavior as prejudicial to the administration of justice); *In re Shearan*, 765 A.2d 930, 939 (Del. 2000) (filing of a lawsuit in contradiction to a court order was prejudicial to the administration of justice).

12

sanction, the parties dispute whether suspension or reprimand is appropriate. ABA Standards 6.22 and 6.23 provide as follows:

> 6.22 Suspension is generally appropriate when a lawyer knows that he or she is violating a court order or rule, and causes injury or potential injury to a client or a party, or causes interference or potential interference with a legal proceeding.

> 6.23 Reprimand is generally appropriate when a lawyer negligently fails to comply with a court order or rule, and causes injury or potential injury to a client or other party, or causes interference or potential interference with a legal proceeding.

The parties do not dispute that Respondent's state of mind was "knowing." Respondent argues, however, that knowing conduct is not the same as intentional conduct. Because he was not charged with "intentional" conduct, the presumptive sanction according to Respondent should be reprimand not suspension.

The argument is a bit hard to follow. ABA Standard 6.22 requires "knowing" conduct, which Respondent has admitted. The Panel believes Respondent is conflating the definition of "knowing" for purposes of establishing a Rule violation, with the definition of "knowing" when applying the ABA Standards to determine the appropriate discipline. Delaware Professional Conduct Rule 1.0(f) does not distinguish between knowing and intentional conduct. Under the Rules, one acts "knowingly" when one has "actual knowledge of the fact in question." Knowing and intentional conduct are the same for purposes of charging a Rule violation.

13

In contrast, the ABA Standards distinguish between the two mental states and add a third. "Intent" is defined as "the conscious objective or purpose to accomplish a particular result." "Knowledge" is defined as "the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." There is also the lesser standard of "Negligence" – "the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation."[40]

Respondent acted with the most culpable state of mind when filing the Maryland Action. Admittedly aware of the Seizure Order, he filed the Maryland Action to exert leverage over Indemnity and its counsel.[41] Respondent hoped to get the attention of his former colleague in Maryland, thinking that he could make an end run around the Delaware proceedings and counsel.[42] He also saw the Maryland Action as a way to get Jeffrey Cohen an audience with new attorneys who might see the wisdom of allowing Cohen back in the doors of Indemnity.[43]

---

[40] ABA Standards – Definitions.
[41] Hr'g Tr. 94-95;
[42] *Id.* at 112-14.
[43] *Id.* at 107-08; 167.

14

Finally, he wanted the Maryland court to review the scope of the companion order filed in Maryland, claiming it was broader than authorized by the Delaware court.[44]

Applying the three factors of Standard 3.0, the Panel finds that Respondent acted intentionally in violation of the Rules, caused actual injury to a party, interfered with a legal proceeding, and caused prejudice to the administration of justice. The presumptive sanction is suspension.

**Aggravating and Mitigating Factors**

Following the determination of the presumptive sanction of suspension, the Panel must consider aggravating and mitigating circumstances before recommending the final sanction to be imposed.[45] Aggravating factors or circumstances are those that might justify an increase, and mitigating factors are those that might justify a decrease, in the degree of discipline to be imposed. From the list of factors included in ABA Standard 9.22, ODC has raised three aggravating factors:

9.22(b) dishonest or selfish motive

ODC argues that Respondent acted with a selfish motive when intentionally violating the Seizure Order. Respondent was brought in to his new firm to develop the firm's commercial litigation practice, and specifically to represent Jeffrey

---

[44] *Id.* at 115-16.
[45] ABA Standard 9.1.

15

Cohen and his businesses.[46] Although Respondent had for the most part terminated his professional relationship with Cohen several months before the Delaware proceedings due to nonpayment and other issues, he resumed the representation when Cohen called desperate for representation.[47] According to ODC, Respondent violated the Seizure Order on Cohen's orders in the hopes of collecting unpaid fees and collecting future fees for the Maryland Action.

The Panel heard Respondent's testimony and assessed his credibility at the hearing. We conclude that this aggravating factor should be applied, but not with full force. Respondent had in mind the substantial overdue fees when he decided to represent Cohen in the Delaware proceedings. He may also have had these fees in mind when filing the Maryland Action. The Panel also finds, however, that Cohen was a demanding and difficult client, and no doubt exerted extreme pressure on Respondent.[48] Although client pressure is neither an aggravating nor mitigating factor under the ABA Standards, the Panel does find it to be a partial explanation for Respondent's violation of the Seizure Order rather than solely selfishness.

9.22(g) refusal to acknowledge wrongful nature of conduct

ODC also argues that Respondent has hedged when it comes to acknowledging the wrongfulness of his conduct. The Panel finds that Respondent

---

[46] Hr'g Tr. 154-55.
[47] *Id.* at 162-63.
[48] *Id.* at 140-43

16

took responsibility for his actions in the Answer and also at the hearing.[49] The Panel concludes that this aggravating factor should not be applied.

### 9.22(i) substantial experience in the practice of law

The parties agree that Respondent has substantial experience in the practice of law.[50] He also has particular experience with insurance proceedings, having spent a number of years in both public and private practice dealing with insurance regulatory matters.[51] Therefore the Panel finds that Respondent's substantial experience is an aggravating factor.[52]

Respondent argues for a number of mitigating factors to consider when determining the appropriate sanction.

### 9.32(a) absence of a prior disciplinary record

The parties agree that Respondent has no prior disciplinary record.

---

[49] *Id.* at 168-71.

[50] *Id.* at 158-62.

[51] *Id.* at 101-03.

[52] Respondent argues that he had no experience in liquidation proceedings, and therefore he should not be viewed as an experienced practitioner. Under Delaware law, however, the inquiry primarily centers on years in practice, rather than expertise in any particular area of the law. *See In re Murray*, 2012 WL 2324172, at *32 (Del. June 18, 2012) (aggravating factor found even though disciplinary violation arose in an area of practice outside attorney's main practice area); *In re Melvin*, 807 A.2d 550, 554 (Del. 2002) (inexperience with area of the law not a mitigating factor).

9.32(b) absence of a dishonest or selfish motive

The Panel has previously found that Respondent may have acted partly with a selfish motive. As with the aggravating factor, the Panel will not apply this mitigating factor with full force.

9.32(c) personal or emotional problems

Respondent argues that Jeffrey Cohen was a bully, harassed Respondent, and caused him emotional distress leading to the filing of the Maryland Action. From this, Respondent apparently argues that Cohen's harassment caused Respondent personal or emotional problems which led him to violate the Seizure Order.

Respondent did not present any testimony from a professional that the client's behavior caused Respondent to suffer from personal or emotional problems. It also appears that this mitigating factor is reserved for personal or emotional problems unrelated to the conduct that led the attorney to commit the ethical violation. Finally, as discussed previously, dealing with a difficult client is neither an aggravating nor a mitigating factor.

9.32(d) timely good faith effort to make restitution or to rectify consequences of misconduct

Once Respondent became aware of the court's displeasure with the filing of the Maryland Action, Respondent immediately dismissed the Maryland Action.[53] He withdrew from the case, paid the costs assessed by the court, and apologized to the court.[54] He also terminated Jeffrey Cohen as a client. The Panel finds this to be a mitigating factor.

9.32(e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings

The parties agree that Respondent was forthcoming with ODC and cooperated with these proceedings.

9.32(f) inexperience in the practice of law

As discussed previously, Respondent has substantial experience in the practice of law. His inexperience in liquidation proceedings is not a mitigating factor.

9.32(g) character or reputation

Respondent's character witnesses testified that Respondent is of good moral character and reputation at the bar, and has had a successful practice as a public and private lawyer.

---

[53] Hr'g Tr. 171.
[54] *Id.* at 168-70.

<u>9.32(k) imposition of other penalties or sanctions</u>

The Court of Chancery has imposed a monetary sanction on Respondent for his contumacious conduct. The Maryland disciplinary authority has issued Respondent a warning.[55]

<u>9.32(l) remorse</u>

The Panel finds that Respondent has expressed remorse for his actions.

After reviewing the aggravating and mitigating factors, the Panel finds that the mitigating factors outweigh the aggravating factors, and that the presumptive sanction of suspension should be reduced to public reprimand. It is important to note that much of the case presented by Respondent revolved around the difficulties he had with Jeffrey Cohen as a client. Respondent and his other witnesses testified convincingly that Cohen exceeded every standard of appropriate client conduct towards his attorney. But, as all parties agreed at the hearing, a difficult or impossible client is neither an aggravating nor mitigating factor.[56] The reason for this hard and fast rule is apparent. The lawyer owes duties not just to the client, but to the legal system. As the Supreme Court of Delaware said in *In re*

---

[55] Hr'g Ex. D. The Attorney Grievance Commission of Maryland dismissed the complaint made by Bar Counsel. As part of the dismissal, the Grievance Commission found that Respondent violated Maryland Rule of Professional Conduct 1.9 by filing suit against a former client, and Rule 8.4(d) by violating the Court of Chancery Seizure Order. The Grievance Commission issues a warning for these violations, which under Maryland rules, is not discipline. The parties to this proceedings agree that the Panel is not bound by Maryland's determination.

[56] ABA Standard 9.4 provides as follows: "The following factors should not be considered as either aggravating or mitigating: ... (b) agreeing to the client's demand for certain improper behavior or result...."

*Abbott*, "[t]his responsibility to the 'Court' takes precedence over the interests of the client because officers of the Court are obligated to represent these clients zealously *within* the bounds of both the positive law and the rules of ethics."[57]

## Delaware Disciplinary Decisions

Although the ABA Standards are used as a guide to determine the appropriate sanction, Delaware precedent must also be considered. ODC cites a number of Supreme Court of Delaware decisions where public reprimands were ordered for Rule 3.4(c) and 8.4(d) violations.[58]

Respondent attempts to distinguish the foregoing cases on their facts. The Panel finds, however, that regardless of the particular facts of these cases, the common thread is a public reprimand for violation of court rules or orders where the attorney acted with a culpable state of mind when disregarding court orders or interfering with the judicial process.

Respondent submitted to the Panel summaries of a number of disciplinary cases where private admonitions were imposed for Rule 3.4(c) violations. After reviewing each of these cases, the Panel finds them all distinguishable. Many

---

[57] 925 A.2d at 487-88 (citing *Nix v. Whiteside*, 475 U.S. 157, 168 (1986)).

[58] *See In re Guy*, 1994 WL 202279 (Del. May 5, 1994) (public reprimand for acting in contempt of court in violation of Rule 3.4(c)); *In re Mekler*, 1993 WL 61674 (Del. Feb. 9, 1993) (public reprimand for disobeying court rules in violation of Rule 3.4(c)); *In re Abbott*, 925 A.2d 482 (public reprimand for filing briefs containing undignified, discourteous, and degrading language); *In re Murray*, 2012 WL 2324172 (engaging in conduct prejudicial to the administration of justice warranted a public reprimand); *In re Wilson*, 2005 WL 3485738 (Del. Nov. 9, 2005) (public reprimand for disobeying rules of a tribunal in violation of Rule 3.4(c)).

21

involved a failure to comply with mandatory continuing legal education requirements[59] or resulted from transgressions much less serious than the conduct in this case, or personal issues unrelated to an attorney's professional judgment.[60] Here, the Respondent intentionally violated a court order to benefit his client, causing injury to Indemnity and the Insurance Commissioner, and caused prejudice to the judicial system.

## CONCLUSION

After applying the ABA Standards, weighing the aggravating and mitigating factors, and considering the Delaware case law and other authorities, the Panel recommends that Respondent be publicly reprimanded, and pay the costs of this proceeding.

Dated: September 25, 2014

---

[59] Board Case No. 1, 1995; Board Case No. 10, 1995; Board Case No. 2007-0338-B; Board Case No. 23, 1997; Board Case No. 44, 1993; Board Case No. 9, 1995; Board Case No. 96, 1997.

[60] Supreme Court No. 62, 2013 (failed to dismiss an appeal or prosecute an appeal); Board Case Nos. 46, 2006 and 26, 2007; Board Case No. 309, 2007 (failed to appear for court and meet court deadlines); Board Case No. 47, 2005; Board Case No. 46, 2005 (failure to comply with efiling directives); Board Case Nos. 42 and 43, 2001 (advising client not to comply with court order until adversary complied); Board Case No. 41, 1992 (failing to pay child support and ignoring ODC requests for information); Board Case No. 24, 2003 (failing to probate estate in a timely manner); Board Case No. 2012-0307-B (appearing without Delaware counsel during a court call); Board Case No. 746, 2010 (violating protection from abuse order).

_____
Collins J. Seitz, Jr., Esq.



_____
Danielle Yearick, Esq.



_____
Deborah I. Armistead

_____
Collins J. Seitz, Jr., Esq.


_____
Danielle Yearick, Esq.


_____
Deborah I. Armistead

_____
Collins J. Seitz, Jr., Esq.




_____
Danielle Yearick, Esq.


_Deborah I. Armistead_
Deborah I. Armistead

23

**JOINT EXHIBITS**

Ex. A    Documents related to *In the Matter of State of Delaware, ex rel., The Honorable Karen Weldin Stewart, CIR-M-L Insurance Commissioner of the State of Delaware v. Indemnity Insurance Corporation, RRG,* C.A. No. 8601-VCL

    A(1)    Confidential Seizure and Injunction Order (May 30, 2013)

    A(2)    Order Regarding Hearing on November 1, 2013 (Rule to Show Cause)

    A(3)    Alex J. Brown's Response to Show Cause Order

    A(4)    Order Granting Motion to Withdraw (January 13, 2014)

    A(5)    Transcript – Oral Argument on Jeffrey B. Cohen's Motion to Stay Pending Appeal and on the Court's Order to Show Cause Regarding Alex J. Brown (January 10, 2014)

    A(6)    Theodore A. Kittila, Esquire's letter to The Honorable J. Travis Laster (October 31, 2013)

    A(7)    Motion for Admission *Pro Hac Vice* (August 15, 2013)

    A(8)    *In the Matter of Rehabilitation of Indemnity Insurance Corporation,* 2014 WL 185017 (Del. Ch. Jan. 16, 2014)

    A(9)    *Cohen, et al. v. State of Delaware,* 89 A.3d 65 (Del. 2014)

Ex. B    Documents related to *IDG Companies, LLC, et al. v. Indemnity Insurance Corporation, RRG, et al.*

    B(1)    Complaint filed in the Circuit Court for Baltimore County (October 11, 2013)

    B(2)    Email from Alex J. Brown, Esquire to Phillip Metcalf (October 11, 2013)

Ex. C    Respondent's correspondence to ODC (January 16, 2014)

Ex. D    Maryland Dismissal With Warning

Ex. E    College Bound Foundation/About Us

Ex. F    Super Lawyers: Rating a Lawyer

Ex. G    A.M. Best Press Release

Ex. H    Complaint (October 8, 2013)

Ex. I    Motion to Unseal Record or Permit Access to Court File

Ex. J    Order Unsealing Court Record